# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 2429 | **DATE** | 9/29/2003 |
| **CASE TITLE** | FTC vs. Consumer Alliance Inc., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Plaintiff's motion for summary judgment is granted in part and denied in part [18-1]. All defendants are found liable under FTC Act and the TSR Rule. The Court enters a permanent injunction against defendants with respect to all aspects of the permanent injunction order previously submitted by the FTC except with respect to the amount of monetary judgment and redress, which will be addressed in a hearing to be scheduled forthwith. The FTC shall submit a permanent injunction order that reflects this Court's holding within ten days of the entry of this Memorandum Opinion and Order. The parties shall schedule a hearing on the sole remaining issue.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 30 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | AR | 33 |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TBK | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 02 C 2429 |
| v. | ) | |
| | ) | Judge Ronald A. Guzmán |
| CONSUMER ALLIANCE, INC., | ) | |
| a Delaware corporation, | ) | |
| | ) | |
| CONSUMER ALLIANCE, INC. a/k/a 1421914 | ) | |
| Ontario Inc., a Canadian corporation, | ) | |
| | ) | |
| BIOSOURCE FINANCIAL, INC., | ) | |
| a Canadian corporation, | ) | |
| | ) | |
| STEVEN WINTER, individually and as | ) | |
| an officer and director of the corporate | ) | |
| defendants, | ) | |
| | ) | |
| GORDON LEVOY, individually and as | ) | |
| an officer and director of the corporate | ) | |
| defendants, | ) | |
| | ) | |
| JASON C. WILLIAMS, individually and as | ) | |
| an officer of the corporate defendants, | ) | |
| | ) | |
| DANNY LONGO, individually and as | ) | |
| an officer of the corporate defendants, | ) | |
| | ) | |
| Defendants. | ) | |

DOCKETED
SEP 3 0 2003

## MEMORANDUM OPINION AND ORDER

Plaintiff Federal Trade Commission ("FTC") has sued defendants Consumer Alliance, Inc., a Delaware corporation, Consumer Alliance, Inc., a/k/a 1421914 Ontario Inc., a Canadian corporation, Biosource Financial, Inc., a Canadian corporation, Steven Winter and Gordon Levoy, individually and as officers and directors of the corporate defendants, and Jason C.

33

Williams, and Danny Longo, individually and as officers of the corporate defendants, pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b) and 57(b), and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. § 6101 *et seq.* In plaintiff's six-count complaint, counts I, II and III allege that defendants violated § 5 of the FTC Act and counts IV, V and VI allege violations of the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310.4(a)(4). Before the Court is plaintiff's motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. For the reasons set forth in this memorandum opinion and order, the Court grants in part and denies in part plaintiff's motion.

## FACTS[1]

Corporate defendants in this case, Consumer Alliance, Inc. ("CA Delaware"), a Delaware corporation, and Consumer Alliance Inc., a/k/a 1421914 Ontario Inc. ("CA Ontario"), a Canadian corporation, had their offices and principal places of business at the same address in Toronto, Ontario, Canada. (Pl.'s LR 56.1(a)(3) ¶¶ 4, 5, 7, 8.) CA Delaware and CA Ontario (collectively "Consumer Alliance") both transact or have transacted business in the Northern District of Illinois and throughout the United States. (*Id.* ¶¶ 6, 9.) Defendant Biosource Financial, Inc. ("Biosource"), a Canadian corporation, had its office and principal place of

---

[1] The following facts are either undisputed or are deemed admitted because the defendants' response did not refute plaintiff's statement of facts and/or was unsupported by a proper citation to the record as required by LR 56.1(b)(3)(A), which this Court strictly enforces. A discussion of the facts that are deemed admitted as to defendants Levoy, Williams, and Longo is provided in the Court's analysis. All facts stated by the FTC are deemed admitted as to defendants CA Delaware, CA Ontario, and Winter because these defendants failed to respond in any way to the FTC's motion.

business in Collingwood, Ontario. (*Id.* ¶ 10, 11.) Biosource transacts or has transacted business in the Northern District of Illinois and throughout the United States. (*Id.* ¶ 12.)

From at least late 1999 through at least late 2001, CA Delaware, CA Ontario and Biosource (collectively the "corporate defendants") deceptively telemarketed credit card protection services and advance fee credit card services to consumers throughout the United States. (*Id.* ¶ 17.) Although Biosource maintained separate facilities from CA Delaware and CA Ontario, Biosource telemarketers often claimed to be selling for Consumer Alliance, solicited consumers on behalf of, and under contract for, Consumer Alliance. (*Id.* at ¶¶ 91-92.) During telephone solicitations, to induce consumers to purchase credit card protection services, the corporate defendants represented, either expressly or by implication, that they were calling from, or were affiliated with, legitimate credit card companies, such as Visa, MasterCard, or the issuing bank of the consumer's credit card although the defendants were not affiliated with, calling from or acting on behalf of these entities. (*Id.* ¶ 18.) During solicitations, the corporate defendants told consumers that they needed to purchase the defendants' products as they are not protected against unauthorized use of their credit card accounts, that the consumers could be held liable for all unauthorized charges on their credit cards, and persuaded consumers to divulge their credit card numbers by stating that they already knew the numbers but needed them for verification. (*Id.* ¶¶ 19-22.) After the defendants obtained consumers' credit card numbers and bank account numbers, they then caused charges to be posted on those accounts without the consumers' knowledge or authorization. (*Id.* ¶ 24.) In addition, the corporate defendants, during telephone solicitations, represented to consumers that they would provide, or arrange for the consumers to receive, low interest credit cards, in return for advance payment, while the defendants did in fact not do so. (*Id.* ¶ 23.)

3

Defendant Steven Winter is or was a director, officer and owner of CA Delaware and CA Ontario. (*Id.* ¶¶ 29-34.) Steven Winter hired and supervised employees, reviewed consumer complaints, responded to letters from government agencies and monitored telephone calls for both CA Delaware and CA Ontario. (*Id.* ¶¶ 35-38.) Steven Winter also monitored telephone calls between telemarketers and consumers, as well as received, reviewed, drafted and approved telemarketing scripts at CA Delaware and CA Ontario. (*Id.* ¶¶ 39-43.) Steven Winter participated directly in the acts and practices of the corporate defendants, including the acts and practices set forth in the FTC's complaint. (*Id.* ¶ 44.)

Defendant Gordon Levoy ("Levoy") is and was a director, officer and owner of Biosource. (*Id.* ¶¶ 46-50.) He shared in the corporation's profits, and hired employees for the corporation. (*Id.*) Levoy reviewed consumer complaints received by Biosource. (*Id.* ¶ 52.) During all times relevant to the instant action, Levoy had authority to control the acts and practices of Biosource. (*Id.* ¶ 60.)

Defendant Jason C. Williams ("Williams") hired employees for Biosource. (*Id.* ¶¶ 64, 70-73.) He received, reviewed, approved, and drafted and copies of telemarketing scripts at Biosource. (*Id.*)

Defendant Danny Longo ("Longo") had the authority to, and did in fact, supervise employees for Biosource and also had the authority to discipline employees for Biosource. (*Id.* ¶¶ 79-81.) Longo also received copies of, reviewed, approved and drafted telemarketing scripts at Biosource. (*Id.* ¶¶ 85-88.)

## DISCUSSION

Pursuant to Federal Rule of Civil Procedure 56(e), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." In determining whether a genuine issue of material fact exists, the Court does not weigh the evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A Court "must view the facts, and all reasonable inferences drawn therefrom, in a light most favorable to the nonmoving party." *Baron v. City of Highland Park*, 195 F.3d 333, 337 (7th Cir. 1999). The nonmoving party may not rest on her pleadings however and instead must demonstrate through specific factual allegations that there is a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If a reasonable jury could not find for the party opposing the motion, it must be granted. *Seshadri v. Kasraian*, 130 F.3d 798, 804 (7th Cir. 1997).

### I. Local Rule 56.1

Summary judgment pleadings in the Northern District must conform to LR 56.1. According to LR 56.1(a)(3), the moving party must file with its motion for summary judgment "a statement of material facts as to which the moving party contends there is no genuine issue and that entitles the moving party to a judgment as a matter of law." This statement is to consist of "short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph." LR 56.1(a)(3). LR 56.1(b)(3) requires the opposing party to a summary judgment motion to respond to the moving party's statement of facts by filing "a concise

5

response to the moving party's statement that shall contain a response to each numbered paragraph in the moving party's statement, including, in the case of disagreement, specific references" to the record or other supporting materials. All those facts set forth in the moving party's statement "will be deemed to be admitted unless controverted by the statement of the opposing party." LR 56.1(b)(3)(B). It should be noted that district courts are given broad discretion to enforce this local rule, *Feliberty v. Kemper Corp.*, 98 F.3d 274, 278 (7th Cir. 1996), and that the Seventh Circuit has "repeatedly upheld the strict enforcement of these rules." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994) (listing cases).

On January 30, 2003, the FTC filed with its summary judgment motion a Statement of Material Facts as to which There Is No Genuine Issue. Defendants CA Delaware, CA Ontario, and Steven Winter failed to respond to the FTC's statement of facts, therefore, pursuant to LR 56.1(b)(3)(B), all facts put forth by the FTC in its statement are deemed admitted as to these defendants.

Defendants Biosource, Levoy, Williams and Longo (collectively, the "Biosource defendants") have submitted a joint response to the FTC's motion for summary judgment and statement of material facts pursuant to LR 56.1. Although defendant Biosource did respond to the FTC's motion and statement of facts, its failure to respond to the FTC's Requests for Admission, pursuant to Fed. R. Civ. P. 36(a), results in the Court's deeming all of those requests as admitted. *See* Fed. R. Civ. P. 36(a). Accordingly, the FTC's citation to these requests in their LR 56.1 statement of facts is proper and leads to the determination that all of those facts supported by a citation to these requests are deemed admitted as to defendant Biosource. *See United States v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987) ("Admissions made under Rule 36, even default admissions, can serve as the factual predicate for summary judgment.").

As stated above, LR 56.1(a)(3) requires that the moving party in summary judgment proceedings must provide "specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph." In its LR 56.1 statement of material facts, the FTC has cited to its Requests for Admissions, and the defendants' failure to respond to such requests, as the sole support for statements of facts in paragraphs 5, 6, 8, 9, 11-16, 21, 35-43, 51, 53-58, 67-69, 82-84. The FTC argues that because defendants Levoy, Williams and Longo responded to its discovery by invoking the Fifth Amendment to all of its Requests for Admission and Interrogatories, pursuant to Fed. R. Civ. P. 36(a), the Court should deem admitted all of the factual statements in the FTC's Requests for Admission as to these defendants. Based upon these admissions, the FTC further argues that the Court should therefore deem as admitted all those facts set forth in the FTC's LR 56.1 statement of material facts supported by citation to its Requests for Admission. This would inevitably lead the Court to the grant of summary judgment against these defendants as to liability solely based upon Admissions that are the result of their invocation of their Fifth Amendment privilege. The issue as to these defendants then is whether their invocation of the Fifth Amendment privilege in response to the FTC's discovery can lead to the finding of summary judgment for the FTC.

The Seventh Circuit has stated, "[s]ilence is a relevant factor to be considered in light of the proffered evidence, but the direct inference of guilt from silence is forbidden." *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 390 (7th Cir. 1995). In *LaSalle Bank Lake View v. Seguban*, where the district court had entered summary judgment in favor of the moving party based solely on the adverse inferences it drew from the nonmovant's invocation of the Fifth Amendment privilege in answering the moving party's motion and statement of facts as required by LR 12(N) (now LR 56.1(b)), the Seventh Circuit reversed the district court's ruling. *Id.* at 388, 393. While

7

the Seventh Circuit did note that "the rule that adverse inferences may be drawn from Fifth Amendment silence in civil proceedings has been widely recognized by the circuit courts of appeals, including our own," it went on to say, that, according to the rule set forth in *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976), "although inferences based on the assertion of the privilege are permissible, the entry of judgment based only on the invocation of the privilege and 'without regard to the other evidence' exceeds constitutional bounds." *LaSalle*, 54 F.3d at 391, (quoting *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)).

The *LaSalle* court went on to discuss the case *National Acceptance Co. v. Bathalter*, 705 F.2d 924, 930 (7th Cir. 1983), where the court ruled that the "failure to answer the allegations of a civil complaint based on an assertion of the Fifth Amendment privilege could not be construed as an admission of those allegations even though Fed. R. Civ. P. 8(d) would other wise require that result." *LaSalle*, 54 F.3d at 390-91. Based upon *National Acceptance*, the Seventh Circuit reasoned in *LaSalle* that "deeming an allegation of a complaint to be admitted based on the invocation of the Fifth Amendment privilege without requiring the complainant to produce evidence" to support its allegations exceeds the limitation explained above in the *Baxter* case. 54 F.3d at 391.

Like the allegations in the complaint in *National Acceptance*, in the instant case, the Requests for Admission that the FTC seeks to be deemed admitted are not supported by any evidence. Requests for Admission are simply a tool of discovery, and are not required to have any evidentiary support. Fed. R. Civ. P. 36. Deeming the FTC's Requests for Admission as admitted based upon the defendants' invocation of the Fifth Amendment, and the inevitable finding of summary judgment that this would result in would be contrary to the limitations set forth in *Baxter*, and the rulings in *LaSalle* and *National Acceptance*.

8

This Court finds that, as to the defendants Levoy, Williams and Longo, those factual statements contained in the FTC's LR 56.1 statement of material facts that are supported solely by citation to its Requests for Admission (Pl.'s LR 56.1(a)(3) ¶¶ 5, 6, 8, 9, 11-16, 21, 35-43, 51, 53-58, 67-69, 82-84) cannot simply be deemed admitted as to these defendants, as doing so would result in the finding of summary judgment as to these defendants based solely on their silence in violation of the rulings in *LaSalle*, *National Acceptance*, and *Baxter*. Those of the FTC's statements that are supported by citations to the FTC's Requests for Admission in addition to other exhibits or evidence will be analyzed in light of the additional evidence and the permissible inferences that the above-cited cases allow due to Levoy, Williams, and Longo's silence in response to the Requests for Admission and to the summary judgment motion. As a result of this analysis, the Court deems admitted facts in paragraphs 46-50, 52, 59, and 60 as to defendant Levoy, facts in paragraphs 64 and 70-73 as to defendant Williams, and facts in paragraphs 79-81 and 85-88 as to defendant Longo.

## II. FTC Act and Telemarketing Sales Rule

Section 5 of the FTC Act prohibits "unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(1). "[T]o establish an act or practice is deceptive, the FTC must establish that the representations, omissions, or practices likely would mislead consumers, acting reasonably, to their detriment." *FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1029 (7th Cir. 1988). Misrepresentations of material facts made for the purpose of inducing customers to purchase goods or services also constitutes unfair or deceptive acts or practices that are forbidden by Section 5(a). *Id.* at 1029 (quoting *FTC v. Kitco of Nevada, Inc.*, 612 F. Supp 1282,

9

1291 (D. Minn. 1985)).

Individuals may be held liable under the FTC Act. *FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 573 (7th Cir. 1989). The first requirement for individual liability is that a corporation's practices are shown to be misrepresentations or omissions of a kind usually relied upon by persons acting reasonably, which results in consumer injury. *Id.* at 573. After corporate liability is established, it must be shown that the individual in question participated directly in the practices or acts, or had the authority to control them. *Id.* This authority may be shown "by active involvement in business affairs and the making of corporate policy, including assuming the duties of a corporate officer." *Id.* Finally, the FTC must establish that the defendants had or should have had knowledge or awareness of the misrepresentations, but that knowledge requirement may be fulfilled by showing that the individual had 'actual knowledge of material misrepresentations, reckless indifference to the truth or falsity of such misrepresentations, or an awareness of a high probability of fraud along with an intentional avoidance of the truth.'

The Telemarketing Sales Rule, 16 C.F.R. § 310.3(a)(4), "prohibits sellers and telemarketers from making false or misleading statements to induce persons to acquire goods or services." *FTC v. Growth Plus Int'l Mktg., Inc.*, No. 00 C 7886, 2001 WL 128139, at *3 (N.D. Ill. Jan. 9, 2001). The TSR also "prohibits telemarketers and sellers from, *inter alia*, requesting or receiving payment of any fee or consideration in advance of obtaining a loan or other extension of credit when the seller or telemarketer has guaranteed or represented a high likelihood of success in obtaining or arranging a loan or other extension of credit for a person." 16 C.F.R. § 310.4(a)(4); *see FTC v. 1263523 Ontario, Inc.*, 205 F. Supp. 2d 205, 209 (S.D.N.Y. 2002). As defined in the TSR, the individual and corporate defendants in this case are rightly considered "sellers" or telemarketers." 16 C.F.R. §§ 310.2(r), (t), (u). The FTC may enforce

violations of the Telemarketing Sales Rule as though they were violations of Section 5 of the FTC Act. 15 U.S.C. § 6105(b).

i. **Corporate Defendants**

Based upon the facts deemed admitted as to the corporate defendants in this case, namely the facts that the defendants represented that they were calling from legitimate credit card companies (Pl.'s LR 56.1(a)(3) ¶ 18), and that after obtaining consumers' credit card numbers and bank account numbers, they then caused charges to be posted on those accounts without the consumers' knowledge or authorization (*id.* ¶ 24), the FTC has conclusively shown that the corporate defendants in this case have employed "unfair methods of competition...and unfair or deceptive acts or practices in or affecting commerce" in violation of the FTC Act. 15 U.S.C. § 45(a)(1). The defendants' representations, omissions, and/or practices, such as those mentioned above, have misled "consumers, acting reasonably, to their detriment." *FTC v. World Travel Vacation Brokers*, 861 F.2d 1020, 1029 (7th Cir. 1988).

The undisputed facts in the record show that from at least late 1999 through at least late 2001, CA Delaware, CA Ontario and Biosource deceptively telemarketed advance fee credit card services to consumers throughout the United States and that these corporate defendants expressly represented to its consumers that they would provide or arrange for the consumers to receive low interest credit cards when they did not do these things. (Pl.'s LR 56.1(a)(3) ¶¶ 17, 23.) This conduct violates the TSR prohibition against "requesting or receiving payment of any fee or consideration in advance of obtaining a loan or other extension of credit when the seller or telemarketer has guaranteed or represented a high likelihood of success in obtaining or arranging a loan or other extension of credit for a person." 16 C.F.R. § 310.4(a)(4) (2002). The corporate

11

defendants, in the activity described above, clearly represented to consumers that there was a high likelihood of success that they would obtain credit cards as a result of the products the defendants were marketing.

### ii. Defendants Winter, Levoy, Williams and Longo

As stated above, an individual may be held liable under the FTC Act if three requirements are met. *Amy Travel Serv., Inc.*, 875 F.2d at 573 (7th Cir. 1989). First, the corporation that employed the individual must be liable under the FTC Act. *Id.* Second, the individual participated directly in the acts or practices that lead to corporate liability. *Id.* Third, the individual knew or should have known that the conduct was dishonest or fraudulent. *Id.* at 573-74.

Defendant Winter's activities and involvement with the corporate defendants lead to the finding of individual liability in this case. As stated above, the corporate defendants in this case are liable for violations of the FTC Act. Because Winter is or was a director, officer and owner of CA Delaware and CA Ontario (Pl.'s LR 56.1(a)(3) ¶¶ 29-34), he is deemed to have directly participated in the acts or practices that lead to liability. *See Amy Travel Serv., Inc.*, 875 F.2d at 573. Winter had knowledge of the corporate acts and practices that result in liability as he reviewed consumer complaints and responded to letters from government agencies, monitored telephone calls for both CA Delaware and CA Ontario, and received, reviewed, drafted and approved telemarketing scripts at CA Delaware and CA Ontario. (Pl.'s LR 56.1(a)(3) ¶¶ 35-43.) These facts meet the requirements for individual liability under the FTC Act and the TSR Rule and accordingly, the Court finds defendant Winter liable.

The activities of defendants Williams and Longo, according to the facts of this case, lead

12

to finding of individual liability under the FTC Act and the TSR Rule. In addition to hiring employees for Biosource, Williams received copies of, reviewed, approved and drafted telemarketing scripts at the company. (Pl.'s LR 56.1(a)(3) ¶¶ 64, 70-73). The telemarketing scripts used by the defendants are the devices through which the illegal misrepresentations and deceptive practices were put into action. By receiving copies of, reviewing, approving and drafting these telemarketing scripts, Williams also was participating directly in the prohibited corporate practices in violation of the FTC Act. These activities also are evidence that Williams had knowledge of the deceptive practices. Longo had the authority to and did supervise and discipline employees for Biosource, and, like Williams, also received copies of, reviewed, approved and drafted telemarketing scripts at the company. (*Id.* at ¶¶ 79-81, 85-88). Again, these facts are sufficient to support the finding that Longo participated directly in the prohibited corporate practices in violation of the FTC Act and the TSR Rule, and that he had knowledge of these practices.

In addition, the FTC has established that there is no genuine issue as to a material fact with regard to Levoy's individual liability under the FTC Act and TSR Rule. The corporate defendants are clearly liable, as discussed above, and Levoy was director, officer and owner of Biosource. Levoy admits that his people sold the identity theft package and financial benefits package and obtained credit card numbers from individuals. (Defs.' Ex. 2, at 6, 8.) Levoy received complaint letters, knew that not all complainants received their packages, reviewed the telemarketing scripts when someone complained (*id.* at 9), and as a result of those complaints, he purports to have refunded roughly 75% of what Biosource sold (*id.* at 1-2, 6). Further, the facts before the Court establish that Levoy, at most, knew, and at the very least, should have known

13

that his people were engaging in dishonest or fraudulent acts. To hold otherwise would require the Court to make unreasonable inferences in Levoy's favor, which this Court is not required to do under Rule 56.

## IV. FTC's Requested Relief

The Court, having found that each defendant is liable under the FTC Act and the TSR Rule, next considers the FTC's requested relief. In its motion, the FTC requests an entry of a permanent injunction against each defendant, together with the monetary equivalent of rescission in the form of restitution to consumers and disgorgement of unjust enrichment in the amount of $19,061,510.00.

Section 13(b) of the FTC Act provides "that in proper cases the Commission may seek and after proper proof, the court may issue, a permanent injunction." 15 U.S.C. § 53(b); *see United States v. JS & A Group, Inc.*, 716 F.2d 451, 457 (7th Cir. 1983). The Seventh Circuit has stated that a district court may order rescission in a Section 13(b) proceeding. *FTC v. Elders Grain, Inc.*, 868 F.2d 901, 907 (7th Cir. 1989). The Seventh Circuit has also stated that the act's granting of authority to provide permanent injunctive relief gives "the district court authority to grant any ancillary relief necessary to accomplish complete justice." *FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1026 (7th Cir. 1988).

Due to the egregious and fraudulent conduct of the defendants in this case, the Court holds that a permanent injunction as to each defendant is appropriate to prevent further fraud and to effectuate the purpose of the FTC Act. There is no evidence in the record that defendants ever provided anything of value to a large class of persons upon which they preyed, and yet,

defendants billed charges to these persons without their authorization. If there ever were a case that warranted the range of permanent injunctive relief proposed by the FTC, this is it.

However, with regard to the amount of monetary relief that is appropriate, there exists a dispute between the parties. In support of its statement of material facts, the FTC presents evidence that CA Delaware reported net sales of at least $4,011,510.00. (Pl.'s LR 56.1(a)(3) ¶ 93.) None of the defendants dispute this. (Defs.' LR 56.1(b)(3)(A) ¶ 93.) The FTC presents no statement of fact as to CA Ontario's sales. As for Biosource, the FTC presents evidence that, based on the number of customer names Biosource provided during the period of March 30, 2001 through late May 2001, Biosource sold at least 8,600 packages at $400.00 each under the Biosource name. (Pl.'s LR 56.1(a)(3) ¶ 93.) The FTC further states that defendants operated under the Biosource name during at least the period of October 2000 through July 2001. (*Id.* ¶ 94.)[2] The FTC asks the Court to extrapolate from these figures and dates that the total loss to consumers as a result of defendants' illegal conduct is $19,061,510. (Pl.'s Mem. Supp. Mot. Summ. J. at 12.) However, Biosource disputes this and relies on the affidavit of Aurelio Cavalieri, Biosource's Controller, which states that Biosource sold packages to 4,454 customers during 2001 and 2002 and Biosource provided refunds to 837 of those customers. (Defs.' LR 56.1(b)(3)(A) ¶ 94; Defs.' Ex. 4, Cavalieri Aff. ¶ 5.)

Thus, while it is clear to the Court that consumer redress is warranted, it is also clear that

---

[2]Biosource attempts to aver that Biosource "is a completely independent corporation from Consumer Alliance." (Defs.' LR 56.1(b)(3)(A) ¶¶ 91, 94.) However, because it is undisputed that Biosource telemarketers often claimed to be selling for Consumer Alliance and that Biosource sold packages for and received commissions from Consumer Alliance, Biosource cannot now attempt to separate itself from Consumer Alliance based merely on the fact that the two corporations maintained separate facilities and that Winter and Williams were more familiar with Consumer Alliance than Levoy. (*See* Defs.' Ex. 2, at 2.)

there is a genuine issue as to a material fact regarding the proper amount. Accordingly, the Court hereby enters a permanent injunction against defendants with respect to all aspects of the permanent injunction order submitted by the FTC except with respect to the amount of monetary judgment and redress, which will be addressed at a hearing scheduled forthwith.

## CONCLUSION

For the reasons set forth above, the FTC's motion for summary judgment is granted in part and denied in part [doc. no. 18-1]. All defendants are found liable under the FTC Act and the TSR Rule. The Court enters a permanent injunction against defendants with respect to all aspects of the permanent injunction order previously submitted by the FTC except with respect to the amount of monetary judgment and redress, which will be addressed in a hearing to be scheduled forthwith. The FTC shall submit a permanent injunction order that reflects this Court's holding within ten days of the entry of this Memorandum Opinion and Order. The parties shall schedule a hearing on the sole remaining issue.

**SO ORDERED:**  **ENTERED:** 7/29/03

HON. RONALD A. GUZMAN
United States Judge